Dear Ms. Stefan:
You have requested a legal opinion from the attorney general concerning who has "ownership" of the current barber apprentice program — that is, who is the real sponsor of this program. The paperwork on file appears to show that the program is co-sponsored by a union local (United Food and Commercial Workers and Allied Industries, Local 496, the local barbers' union) and the Louisiana Board of Barber Examiners. You question whether the Louisiana Board of Barber Examiners can actually sponsor or co-sponsor the program, because it is a regulatory agency of the State of Louisiana and regulates both the practice and the formal teaching of barbering, in order to protect the members of the public who are purchasers and potential purchasers of barbering services. You further believe that it would be a conflict of interest for such an agency to sponsor a barber apprenticeship program.
The barber apprenticeship program is only one of the many apprenticeship programs available in Louisiana and throughout the nation for a vast number of careers. The statutory laws governing the official, formal, and state-approved set of apprenticeship programs — those registered with the state — are contained in Chapter 4 ("Apprentices") of Title 23 ("Labor and Workmen's Compensation") of the Revised Statutes of 1950 [see R.S. 23:381-392]. "An apprenticeship program shall be registered in any trade or group of trades in accordance with this Chapter and with the standards of the Bureau of Apprenticeship Training, United States Department of Labor," R.S. 23:385(A). R.S. 23:385(B) provides,
 An apprenticeship program may be "joint", meaning it is composed of an equal number of representatives of the employers and of the employees represented by bona fide collective bargaining agencies and has been established to conduct, operate, or administer an apprenticeship *Page 2 
program and enter into apprenticeship agreements with apprentices. "Unilateral" or "nonjoint" shall mean a program sponsor in which a bona fide collective bargaining agent is not a participant.
(Emphases added.) Accordingly, under Louisiana statutory law, the apprenticeship program is either joint, consisting of both employees represented by bona fide collective bargaining agents (unions) and employers, or unilateral (or non-joint), consisting of employers alone. Indeed, a reading of these statutory laws on apprenticeship reveal no authority for an apprenticeship program sponsored by a state regulatory agency.
As seen from the first quoted statutory provision above, the state does not act alone in this endeavor to provide registration and standards for apprenticeship programs; rather, it is first and foremost an endeavor of the United States Department of Labor through its Bureau of Apprenticeship Training. Accordingly, these apprenticeship programs are really governed by federal law and regulation. See 29 Code of Federal Regulations (C.F.R.) § 29.1 to § 29.13 (adopted under the authority of29 U.S.C. § 50, 40 U.S.C. § 276c, 5 U.S.C. § 301, and 5 U.S.C. App., p. 534) [29 C.F.R. §§ 29.1 through 29.13 are the federal regulations setting forth and entitled "Labor Standards for the Registration of Apprenticeship Programs"]. The overall purpose of the program is "to safeguard the welfare of apprentices," 29 U.S.C. § 50 and29 C.F.R. § 29.1. And such is the purpose, duty, and responsibility of the state apprenticeship council, which acts with the approval, cooperation, and recognition of and under the auspices of this federal program. Another inherent purpose is to protect the consuming public who purchase services rendered by those who have learned, through an apprenticeship program, how to provide such services, by assuring a certain minimum level of knowledge and competency in those who render such services.
29 CFR § 29.3(h) and (i) provide:
 (h) Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgement of union agreement or no objection to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. The registration agency shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt of union comments, if any, before final action on the application for registration and/or approval.
 (i) Where the employees to be trained have no collective bargaining agent, an apprenticeship program may be proposed for registration by an employer or group of employers. *Page 3 
Again, the federal regulations call for sponsorship by employers or a combination of employers and employees represented by a collective bargaining agent (union). A review of these regulations fail to reveal the authority for actual sponsorship by a state regulatory agency.
While there are substantial questions whether the union in this matter of barber apprenticeship can alone sponsor the program without any employers and whether this union actually performs any collective bargaining activities with employers for any barber employees (since the vast majority of barber shops enter into agreements with independent contractors who are barbers rather than hire employee barbers), we will pretermit these questions for purposes of answering your specific request. There is no authority in the apprenticeship provisions for the sponsoring or co-sponsoring of an apprenticeship program by a state regulatory agency which regulates barbering.
Also, a review of Chapter 5 ("Barbers") of Title 37 ("Professions and Occupations") of the Revised Statutes of 1950 [R.S. 37:341-392] [sometimes referred to as the "barber law"] fails to reveal any statutory authority given by the Louisiana Legislature to the Board of Barber Examiners to sponsor an apprenticeship program. All references therein to a barber apprenticeship program require that this board grant an apprenticeship license to engage in the practice of barbering, if the apprentice is part of an apprenticeship program registered with the Louisiana Department of Labor.
Therefore, it is our conclusion that the Board of Barber Examiners has not been given and does not have the authority to sponsor or co-sponsor a barber apprenticeship program and cannot legally do so. We also agree with you that it might be a conflict of interest for this board to do so, because part of the barber apprenticeship program requires the barber apprentices to attend certain study classes that could or may possibly be regulated by this same board.
We think that you, acting under R.S. 23:390, either together with the apprenticeship council or alone, may determine that the Board of Barber Examiners be removed from the paperwork of the barber apprenticeship program as a sponsor or co-sponsor. If it wishes to do so, the board may appeal that determination to the secretary of the department, as provided by R.S. 23:390. However, it is our legal opinion that such determination should be confirmed and upheld as a matter of law. *Page 4 
We trust that this opinion has adequately answered your request, but if you have any further questions, please do not hesitate to ask us to answer them. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By: THOMAS S. HALLIGAN
 Assistant Attorney General
 JDC/TSH/sfj